



CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed April 15, 2020**

**United States Bankruptcy Judge**

---

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **John Horton Mooney and** | § | **Case No. 18-33340-hdh7** |
| **Dominique Berta Magrams Mooney,** | § | |
| | § | |
| **Debtors.** | § | |

---

| | | |
|---|---|---|
| **John Horton Mooney and** | § | |
| **Dominique Berta Magrams Mooney,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Adversary No. 18-03342-hdh** |
| | § | |
| **Ovation Services, LLC and** | § | |
| **FGMS Holdings, LLC,** | § | |
| | § | |
| **Defendants.** | § | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

On November 1, 2018, John Horton Mooney and Dominique Berta Magrams Mooney (the

"Debtors") filed their *Plaintiff's Original Complaint* [Docket No. 1] (the "Complaint").  Through

the Complaint, the Debtors seek to avoid the transfer of certain property to Ovation Services, LLC ("Ovation") and FGMS Holdings, LLC ("FGMS" and together with Ovation, the "Defendants") as a constructive fraudulent transfer under section 548(a)(1)(B) of the Bankruptcy Code. The trial for this adversary proceeding was scheduled for February 25, 2020, but the Debtors did not appear for trial on that date. Accordingly, the parties agreed that in lieu of a trial, they would submit stipulated facts and supplemental briefing by the end of March 2020. The parties submitted their *Stipulated Facts* [Docket No. 45] and additional briefing[1] on March 31, 2020. The following are the Court's Findings of Fact and Conclusions of Law.[2]

## I. JURISDICTION AND VENUE

This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This adversary proceeding involves a core matter under 28 U.S.C. § 157(b)(2)(H). Venue for this adversary proceeding is proper pursuant to 28 U.S.C. § 1409(a).

## II. FINDINGS OF FACT

The facts of this adversary proceeding are not in dispute.[3] On January 27, 2015, the Debtors signed a promissory note and deed of trust in favor of Tax Ease Funding, LLC ("Tax Ease Funding").[4] The promissory note and deed of trust secured a loan for payment of past-due *ad valorem* taxes on the Debtors' homestead (the "Property") for 2010 through 2013 in the principal

---

[1] *Defendant's [sic] Brief in Support of Judgment* [Docket No. 46] ("Defendants' Post-Trial Brief"); *Plaintiffs' Trial Brief* [Docket No. 47] ("Plaintiffs' Post-Trial Brief").

[2] The following are the Court's Findings of Fact and Conclusions of Law, issued pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable in adversary proceedings by Federal Rule of Bankruptcy Procedure 7052. Any Finding of Fact that more properly should be construed as a Conclusion of Law shall be considered as such, and *vice versa*.

[3] The Court hereby incorporates the facts and exhibits stipulated to by the parties in the Stipulated Facts. *See* Docket No. 45. The Court also takes judicial notice of the Debtors' bankruptcy schedules pursuant to its *Order Granting Defendants' Motion for Judicial Notice* [Docket No. 48].

[4] Stipulated Facts at ¶ 1.

amount of $6,922.85.[5] On that same day, the Debtors signed a document authorizing a transfer of any tax liens from the statutory taxing authorities to Tax Ease Funding.[6] On February 10, 2015, the Hunt County Tax Office transferred its tax lien on the Property to Tax Ease Funding.[7] On March 14, 2016, Tax Ease Funding transferred its rights under the promissory note and the deed of trust to FGMS, which thereby became the holder of a lien against the Property under section 32.06 of the Texas Tax Code.[8]

Ovation is the authorized mortgage servicer for FGMS.[9] On April 20, 2017, Ovation commenced a foreclosure proceeding under non-bankruptcy law against the Debtors in the 196th District Court, Hunt County, Texas.[10] Ovation made several allegations in the state-court matter, including that the value of the Property was $33,030.00.[11] On November 30, 2017, Ovation obtained a default judgment in state court against the Debtors and in favor of itself (the "Judgment").[12] The Judgment included the following findings: (1) the market value of the Property was $76,601.00, (2) judgment was rendered for the total amount of $16,684.14, plus any penalties and interest that accrued from November 30, 2017, and (3) the clerk of court was authorized to issue an order of sale for the Property.[13]

---

[5] *Id.* The Property is located at 1504 Jefferson Street, Commerce, Texas 75428. *Id.* at ¶ 5.

[6] *Id.* at ¶ 2.

[7] *Id.* at ¶ 2.

[8] *Id.* at ¶ 3.

[9] *Id.* at ¶ 4.

[10] *Id.* at ¶ 6.

[11] *Id.* at ¶ 6. On May 1, 2017, the Hunt County Appraisal District issued its "2017 Notice of Appraised Value," appraising the value of the Property for tax purposes at $33,790.00. *Id.* at ¶ 8.

[12] *Id.* at ¶ 7.

[13] *Id.*

On May 1, 2018, a sale of the Property was conducted pursuant to an order of sale as contemplated by the Judgment.[14] At the sale, Ovation submitted the winning bid and purchased the Property for $18,832.27.[15] On May 8, 2018, Ovation deeded the Property without warranty to FGMS for the stated consideration of $10.00.[16] The transfers on May 1, 2018 and May 8, 2018 occurred within two years of the filing of the Debtors' Chapter 7 bankruptcy case,[17] and the Debtors were insolvent when the transfers were made.[18]

On April 15, 2019, Hunt County Appraisal District issued its "2019 Notice of Appraised Value," appraising the value of the Property for tax purposes at $43,840.00.[19] No party filed any post-judgment pleadings in state court concerning any matter, including the appraised value of the Property.[20]

The Debtors contend that they received less than "reasonably equivalent value" for the Property because (1) Ovation paid less than 25% of the judicially-determined market value of the Property and (2) Ovation transferred the Property to FGMS for only $10.00.[21] Consequently, the Debtors argue that the transfers should be avoided as a fraudulent conveyance pursuant to section 548(a)(1)(B) because less than a "reasonably equivalent value" was received; the transfers occurred within two years of filing of the petition; and the Debtors were insolvent on the date of

---

[14] Stipulated Facts at ¶ 9. On April 16, 2018, the Hunt County Appraisal District issued its "2018 Notice of Appraised Value," appraising the value of the Property for tax purposes at $34,670.00. *Id.* at ¶ 13.

[15] *Id.* at ¶ 9.

[16] *Id.* at ¶ 10.

[17] *Id.* at ¶ 11.

[18] Stipulated Facts at ¶ 12.

[19] *Id.* at ¶ 14.

[20] *Id.* at ¶ 15.

[21] *See* Plaintiffs' Post-Trial Brief. Specifically, the Debtors assert that the $18,832.27 Ovation paid for the Property was 24.58% of the value of the Property provided for in the Judgment.

the transfers.[22] The Defendants counter that (1) the appraised value of the Property in the Judgment was erroneous, and that the actual market value of the Property at the time of the Judgment was much lower;[23] and (2) the Property was sold in accordance with the Texas Tax Code for tax sales and therefore the sale price constitutes "reasonably equivalent value" within the meaning of section 548(a)(1)(B)(i) as a matter of law.[24]

## III.  CONCLUSIONS OF LAW

The Debtors' claims fail because a non-collusive tax sale properly conducted under Texas law may not be avoided as a fraudulent transfer for lack of "reasonably equivalent value" under section 548(a)(1)(B). In *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 545 (1994), the Supreme Court held that the price received at a foreclosure sale is a "fair and proper price, or a 'reasonably equivalent value,' for the foreclosed property," so long as all the requirements of the State's foreclosure law have been complied with. *BFP* did not address a tax sale, which is how the Property in this case was transferred, but the Fifth Circuit Court of Appeals extended *BFP* to tax sales when it held that the amount received at a non-collusive and properly-conducted tax sale is "for present fair equivalent value" within the meaning of section 549(c). *T.F. Stone Co. v. Harper (In re T.F. Stone Co.)*, 72 F.3d 466, 467 (5th Cir. 1995). The Fifth Circuit relied on the reasoning of *BFP* in reaching its decision, which is particularly instructive in the case at bar. *T.F. Stone*, 72 F.3d at 470 ("[The Court is] unable . . . to perceive a meaningful difference between 'reasonably' and 'present fair' as applied in the context of this forced-sale case.").

The Court notes that in *T.F. Stone*, the Fifth Circuit was applying *BFP* to a tax foreclosure sale conducted under Oklahoma law. While the Court has no reason to believe the Fifth Circuit

---

[22] *Id.*

[23] *See supra* note 11.

[24] *See* Defendants' Post-Trial Brief.

would analyze the application of *BFP* to a tax foreclosure sale conducted under Texas law differently, it is worthwhile to note that courts in other circuits have held that a state's procedure for tax sales is a significant factor in determining whether a transfer pursuant to a tax sale constitutes "reasonably equivalent value" under section 548 of the Bankruptcy Code. *See, e.g.*, *Kojima v. Grandote Int'l Ltd. Liability Co. (In re Grandote Country Club Co., Ltd.)*, 252 F.3d 1146, 1152 (10th Cir. 2001). Under these cases, transfers pursuant to tax sales are deemed to constitute "reasonably equivalent value" only in states that require tax sales to take place publicly under competitive bidding procedures. *See id.* at 1152; *see also* 5 Collier on Bankruptcy ¶ 548.01 n. 70 (Alan Resnick & Henry J. Sommer eds., 16th ed. rev. 2020) (citing cases).

In this case, the Defendants acquired the Property through a tax sale conducted pursuant to, and as contemplated by, the Judgment. This sale was subject to public and competitive bidding procedures. *See* Tex. Tax Code Ann. § 34.01; Exhibit PX-6. The dispute over the market value of the Property is not relevant to the Court's decision. The Debtors have not presented evidence that the tax sale in this case was collusive and have not otherwise alleged that the tax sale in this case was conducted in violation of Texas law. Therefore, the tax sale of the Property constitutes a transfer for "reasonably equivalent value" under section 548(a)(1)(B)(i), and the relief sought in the Complaint will be denied.

###END OF FINDINGS AND CONCLUSIONS###